**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 14-cv-2535-WJM-KMT

JACK J. GRYNBERG,

    Plaintiff,

v.

TELLUS OPERATING COMPANY, a Mississippi corporation,
TC ENERGY, LLC, a Mississippi limited liability company, and
HESS CORPORATION, a Delaware corporation,

    Defendants.

HESS CORPORATION, a Delaware corporation,

    Third-Party Plaintiff,

v.

DENBURY ONSHORE, LLC, a Delaware limited liability company,

    Third-Party Defendant.

---

**ORDER DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

---

Plaintiff Jack J. Grynberg ("Grynberg") sues Defendants Tellus Operating Company ("Tellus"), TC Energy, LLC ("TC Energy"), and Hess Corporation ("Hess") (collectively, "Defendants") for failure to honor Grynberg's alleged profit-sharing interest in a Mississippi oilfield. (*See generally* ECF No. 35.) Hess, as a third-party plaintiff, seeks indemnification from third-party defendant Denbury Onshore, LLC ("Denbury"). (*See* ECF No. 44.)

Before the Court are five interrelated motions:

- Hess's motion to stay the case in favor of ongoing proceedings in Mississippi (ECF No. 47);

- Denbury's motion to dismiss Hess's third-party complaint for lack of personal jurisdiction (ECF No. 54);

- TC Energy's motion to dismiss for lack of subject matter and personal jurisdiction (ECF No. 92);

- Hess's joinder in TC Energy's subject matter jurisdiction challenge (ECF No. 94); and

- Tellus's motion to dismiss for lack of personal jurisdiction and failure to state a claim (ECF No. 95).

For the reasons stated below, the Court finds that it lacks subject matter jurisdiction (both diversity and ancillary jurisdiction) over TC Energy, and that the case should not proceed without TC Energy as a party. The Court therefore dismisses this action in its entirety, including the third-party action between Hess and Denbury, and denies all other relief as moot.

## I. FACTS

The Court takes the following facts from Grynberg's First Amended Complaint and attached documents (ECF Nos. 35, 35-1, 35-2, and 35-3), and from findings and conclusions entered by this Court in 1972 in a dispute between Grynberg and Hess's predecessor-in-interest over the same subject matter. *See Grynberg v. Amerada Hess Corp.*, 342 F. Supp. 1314 (D. Colo. 1972).

**A.     The 1963 Agreement**

On December 27, 1963, Hess contracted to have Grynberg (a petroleum engineer, geophysicist, and Colorado resident) explore for oil in Louisiana, Mississippi, Alabama, and Arkansas ("1963 Agreement").  (ECF 35-1.)  The 1963 Agreement had a two-year duration.  (*Id*. § 2.)

To the extent that Hess or Grynberg secured drilling rights on the prospects discovered through Grynberg's efforts, the 1963 Agreement granted Grynberg a "20% net profits interest" on income obtained through those prospects.  (*Id*. § 6(A).)  Grynberg usually refers to this 20% net profits interest as the "NPI."  (ECF No. 35 ¶ 8.)  The NPI was calculated by subtracting "Chargeable Expenses" (*e.g.*, drilling rig operation costs, ad valorem taxes, etc.) from "Gross Proceeds" (meaning "the aggregate proceeds received and owned by Hess and its successors in interest from the sale of oil, gas and other hydrocarbon substances produced [from that prospect]").  (ECF No. 35-1 § 6(A).)

Grynberg's NPI, however, was "contingent on [Hess] realizing an aggregate Income at the end of the two-year period covered by [the 1963 Agreement]."  (*Id*.)  In that event, the 1963 Agreement required Hess to "execute, and deliver to Grynberg appropriate instruments, in proper form for recording, evidencing Grynberg's [NPI] . . . in each Prospect."  (*Id*. § 6(B).)  In other words, Grynberg would receive a "separate computation" of his NPI for each prospect profitably developed.  (*Id.*)  The 1963 Agreement required Hess to make this computation and remit money owed to Grynberg "within thirty (30) days after the end of [each profitable] calendar quarter."  (*Id*. § 6(C).)

The 1963 Agreement further required that if Hess sold any NPI-laden prospect, Hess would buy out Grynberg's NPI for 20% of the net value received from the sale. (*Id*. § 7(A).)

**B.     The 1973 Judgment**

In 1965, Hess and Grynberg agreed to terminate the 1963 Agreement early. *Grynberg*, 342 F. Supp. at 1316. The parties' termination agreement stated that Grynberg would receive his NPI as to any profitable production from a list of seven specific prospects. *Id*. In the ensuing years, only three of those prospects produced oil: "1. Washita-Fredricksburg Oil Pool of the Gitano Field, Jones County, Mississippi. [¶] 2. Prison Farm, Iberville Parish, Louisiana. [¶] 3. Bay Springs, Smith County, Mississippi." *Id*. at 1316–17. The Bay Springs prospect was (and still is) more commonly known as the Tallahala Creek Field. *Id*. at 1317. (*See also* ECF No. 35 ¶ 12.)

Sometime before 1972, Grynberg sued Hess in this Court for an accounting and to enforce his NPI as to these three prospects. *See Grynberg*, 342 F. Supp. at 1314. After a bench trial, the Court concluded: (a) Grynberg had no NPI in the Washita-Fredricksburg prospect, *id*. at 1323; (b) Grynberg had an NPI in the Prison Farm prospect, but Louisiana law limited the NPI's existence to ten years, *id*. at 1322–23; and (c) Grynberg had an enforceable and continuing NPI in the Tallahala Creek Field, *id*. at 1321–22. This Court therefore ordered "an accounting to determine the net profits earned [from the Tallahala Creek Field], but [Grynberg] is entitled to that accounting only." *Id*. at 1323.

4

The parties proceeded with an accounting for the Tallahala Creek Field and also, for reasons not in the record, an accounting of the Prison Farm prospect, leading to this Court's Supplemental Findings, Judgment and Decree entered August 6, 1973 ("1973 Judgment" or "Judgment").  (ECF No. 35-2.)  The 1973 Judgment stated that Hess had generated no net income from the Prison Farm prospect.  (*Id*. ¶ d.)  The Judgment's treatment of the Tallahala Creek Field is more complicated.

The Judgment states that Hess owed Grynberg approximately $203,000 for oil already produced from Hess's "interests subject to the [1963 Agreement]."  (*Id*. ¶¶ a–b.)  The Judgment does not specify whether "interests" refers specifically to the Tallahala Creek Field or to something broader.  The Judgment nonetheless required Hess to pay this sum to Grynberg (along with $8,000 in interest, which was the result of a compromise).  (*Id*. ¶¶ c, 1.)  Then, going forward, the Judgment required Hess to "execute . . . a good and sufficient assignment to [Grynberg] . . . of a Net Profits Interest equal to Twenty per cent (20%) of the Net Income, as defined in paragraph 6 of the [1963 Agreement[1]], from [Hess's] total interest in production of oil and gas in the Tallahala Creek Field . . . .  The assignment shall be in form and substance as attached hereto as Exhibit 'A.'"  (*Id*. ¶ 3.)  This assignment ("1973 Assignment" or "Assignment"), which Hess duly executed, may be a reflection of the 1963 Agreement's requirement that Hess "execute, and deliver to Grynberg appropriate instruments, in proper form for recording, evidencing Grynberg's [NPI] . . . in each Prospect."  (ECF No. 35-1 § 6(B).)

---

[1] The Judgment actually specifies "the Agreement dated December 27, 1973," rather than 1963.  This is obviously a typographical error, as that date had not occurred when the 1973 Judgment was entered.

The Assignment is described in detail further below.

As for the remainder of the 1973 Judgment, it went on to create a continuing payment requirement.  It ordered quarterly accountings from April 1, 1973, "in accordance with the provisions of the [1963 Agreement], and the [1973 Assignment] . . . .  Such accounting and payments due [to Grynberg] . . . as shown by such accountings shall be made by [Hess] within 30 days after the end of each such calendar quarter . . . ."  (*Id*. ¶ 4.)

Finally, the Judgment stated, "In consideration of the payments herein set forth to be made by [Hess] and to [Grynberg], both parties stipulate and agree that no appeal from this Judgment shall be taken by either party."  (*Id*. ¶ 7.)

**C.     The 1973 Assignment**

The 1973 Assignment (ECF No. 35-3) essentially turns the terms of the 1973 Judgment into a contract, at least as to the Tallahala Creek Field.  Like the Judgment, the Assignment grants Grynberg a 20% NPI.  (*Id*. at 5.)[2]  Like the Judgment, the Assignment requires Hess to calculate the NPI quarterly and pay it within thirty days of the end of the quarter.  (*Id*. at 7.)

The Assignment also goes further than the Judgment.  It grants Grynberg the right to review Hess's books and records.  (*Id*. at 8.)  It also reprises the 1963 Agreement's clause stating that Hess could sell any NPI-laden prospect so long as it paid Grynberg 20% of the net profit realized from that sale.  (*Id*. at 8–9.)  Finally, the Assignment states that it "shall be binding upon and inure to the benefit of the parties

---

[2] All page cites in ECF materials are to the page specified in the ECF header, which does not always match the document's internal pagination.

hereto, their heirs, legal representatives, successors and assigns." (*Id*. at 10.)

### D.    The Complaint

"Upon information," Grynberg alleges, "in 1996 Hess sold its interest in the Tallahala Field but did not invoke its option to purchase the NPI from [Grynberg], who has not received any NPI accounting or payment for many years." (ECF No. 35 ¶ 16.) Grynberg therefore sued Hess, Tellus, and TC Energy.  Grynberg alleges that TC Energy is the current owner of the Tallahala Creek Field and Tellus is TC Energy's operator for that field. (*Id*. ¶¶ 2–3, 16–17, 19.)  Grynberg alleges that these Defendants have "failed to [provide accountings] despite requests from [Grynberg]." (*Id*. ¶ 18.)

Grynberg alleges five causes of action:

1. declaratory judgment that his NPI is still valid and that he still deserves payments "as provided in the [1963 Agreement], the 1973 Judgment and the 1973 Assignment" (*id*. ¶¶ 21–23);
2. request for an accounting (*id*. ¶¶ 24–26);
3. breach of contract (*id*. ¶¶ 27–31);
4. breach of the implied covenant of good faith and fair dealing (*id*. ¶¶ 32–36); and
5. conversion (*id*. ¶¶ 37–40).

Hess has filed a third-party complaint against Denbury. (ECF No. 44.)  Hess alleges that Denbury is the party that purchased Hess's interest in the Tallahala Creek Field and that Denbury has a duty to indemnify Hess. (*See id*.)

**E.      Proceedings in Mississippi**

Grynberg filed this lawsuit on September 12, 2014. (ECF No. 1.) On November 7, 2014, TC Energy filed for declaratory judgment against Grynberg in the Chancery Court for Smith County, Mississippi, where the Tallahala Creek Field is located. (ECF No. 47-1.) TC Energy there alleges that Grynberg's NPI does not burden any of its current interests. (*Id*. ¶ 1.) Grynberg removed that suit to the United States District Court for the Southern District of Mississippi on December 12, 2014. (ECF No. 47-4.) TC Energy moved to remand because (as discussed further below) certain of its members are Colorado residents, just like Grynberg, thus destroying diversity jurisdiction under 28 U.S.C. § 1332(a). (ECF No. 71-1.) Grynberg filed no response, and the court granted the motion on February 3, 2015. (ECF No. 71-3.)

Meanwhile, on December 5, 2014, Denbury filed suit in Smith County Chancery Court against Grynberg, his wife (to whom Grynberg allegedly assigned his NPI), Hess (from whom Denbury obtained an interest in the Tallahala Creek Field), and an entity named Hilcorp Energy I, LP (to whom Denbury sold its interest in the Tallahala Creek Field). (ECF No. 47-2 ¶¶ 10–11.) Denbury "seeks a Declaratory Judgment that the Grynbergs['] claimed NPI has terminated, and if not, the indemnification obligations of [the other parties]." (*Id*. ¶ 18.) On January 21, 2015, Grynberg removed this suit to the Southern District of Mississippi. (ECF No. 71-5.) Denbury moved to remand because it and Hilcorp Energy both have Texas citizenship for diversity jurisdiction purposes, and because it and Hess both have Delaware citizenship for diversity jurisdiction purposes, thus destroying such jurisdiction. (*See Denbury Onshore, LLC v. Grynberg et al.*, Case

No. 3:15-cv-46-CWR-LRA, ECF No. 8 (S.D. Miss., filed Feb. 12, 2015).)  The court granted that motion on March 23, 2015.  (*See id.*, ECF No. 17.)

## II. ANALYSIS

The parties have filed an overlapping series of motions.  TC Energy moves to dismiss for lack of subject matter jurisdiction and lack of personal jurisdiction.  (ECF Nos. 92, 93.)  Hess joins TC Energy's challenge to subject matter jurisdiction.  (ECF No. 94.)  Tellus "agrees with" this challenge as well.  (ECF No. 95 at 2 n.1.)  Denbury has stated no position.

Tellus moves to dismiss for lack of personal jurisdiction and failure to state a claim.  (ECF No. 95.)  No other party has joined or stated support for this motion.

Hess asks the Court to abstain from exercising jurisdiction given the Mississippi proceedings.  (ECF No. 47.)  TC Energy has stated no position on this motion.  Tellus "supports and agrees with" the motion.  (ECF No. 62 at 1.)  Denbury "does not oppose" the motion but asks this Court to grant its separate motion to dismiss Hess's third-party complaint for lack of personal jurisdiction (ECF No. 54) before deciding whether to abstain from jurisdiction.  (*See* ECF No. 56 at 1–2.)  However, briefing on Denbury's personal jurisdiction motion has been stayed pending resolution of the other motions at issue here.  (*See* ECF No. 58.)

The Court finds that TC Energy's challenge to subject matter jurisdiction is dispositive.  The Court therefore does not address any of the other arguments to dismiss or stay this case.

### A.     Subject Matter Jurisdiction

Grynberg alleges diversity jurisdiction under 28 U.S.C. § 1332(a).  (ECF No. 35 ¶ 5.)  Diversity jurisdiction, however, requires complete diversity, meaning that no defendant is a citizen of the same state as any plaintiff.  *McPhail v. Deere & Co.*, 529 F.3d 947, 951 (10th Cir. 2008) ("Under 28 U.S.C. § 1332(a) the citizenship of all defendants must be different from the citizenship of all plaintiffs.").  Here, Grynberg has sued TC Energy, a limited liability company.  (ECF No. 35 ¶ 3.)  LLCs are treated as citizens of every state in which their members reside.  *See Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, ___ F.3d ___, ___, 2015 WL 1430335, at *4 (10th Cir. Mar. 31, 2015) ("only those state-created entities that are corporations, in the traditional understanding of that word, will be treated as a person for purposes of diversity jurisdiction").[3]  If their members are likewise LLCs (or partnerships or similar non-corporate business entities), the Court must "drill[] down" through those member entities until it reaches a natural person or a corporation and then judge the citizenship of the LLC according to all the natural persons or corporations that ultimately comprise the LLC.  *Giroux v. Heartland Tech. Partners, LLC*, 2013 WL 5477612, at *1 (D. Colo. Oct. 1, 2013).

---

[3] Grynberg argues that the Tenth Circuit has never considered the question of LLC citizenship and therefore no binding authority requires the Court to treat LLCs as citizens of the states where their members reside.  (ECF No. 109 at 5.)  That was true on the date Grynberg filed its brief (March 20, 2015).  Eleven days later, however, the Tenth Circuit decided *Siloam Springs*, and settled the question in favor of the rule stated above.

TC Energy alleges, and Grynberg does not contest,[4] that TC Energy's sole member is Tellus Energy, LLC (not to be confused with Defendant Tellus). (ECF No. 93 at 5.) Tellus Energy's sole member is Tenrgys, LLC. (*Id.*) One of Tenrgys's members is RADCO Resources, LLC, and one of RADCO's members is Rodgers Dockstader, a natural person and Colorado citizen. (*Id.*) Another of Tenrgys's members is Vaughey Investments, L.L.C., whose sole member is John C. Vaughey, a natural person and Colorado citizen. (*Id.*) Yet another of Tenrgys's members is V & V Indirects, LLC, whose sole member is Vaughey & Vaughey, LLC, whose members include John C. Vaughey, Marcia Vaughey, Mary Dockstader, and Virginia R. Smith—all of whom are natural persons and Colorado citizens. (*Id.*)

Thus, having drilled down to perhaps the same depths as the Tallahala Creek Field, the Court has discovered Colorado citizens on Defendants' side of the "v." As a result the Court lacks subject matter jurisdiction under 28 U.S.C. § 1332(a).

**B.     Ancillary Jurisdiction**

Grynberg points out, however, that this Court's ancillary jurisdiction is sometimes sufficient to create jurisdiction even where diversity jurisdiction is lacking. (ECF No. 109 at 6–7.) Ancillary jurisdiction flows from the idea that "a district court acquires jurisdiction of a case or controversy in its entirety, and, as an incident to the full disposition of the matter, may hear collateral proceedings when necessary to allow it to vindicate its role as a tribunal." 13 Charles Alan Wright et al., *Federal Practice &*

---

[4] The Court is aware that Grynberg moved for and was denied jurisdictional discovery. (*See* ECF Nos. 110 & 118.) Grynberg, however, was seeking discovery related to personal jurisdiction, not subject matter jurisdiction. (*See generally* ECF No. 110.)

*Procedure* § 3523.2 (3d ed., Sept. 2014 update) ("*Wright & Miller*"). "Thus, if a federal court had jurisdiction of the principal action, it may hear an ancillary proceeding, regardless of the citizenship of the parties, the amount in controversy, or any other factor that normally would determine subject matter jurisdiction." *Id*. Grynberg argues that this Court has ancillary jurisdiction to enforce the 1973 Judgment. (ECF No. 109 at 6–7.)

Ancillary jurisdiction, unfortunately, "has rather uncertain limits," 13 *Wright & Miller* § 3523.2, and the facts of this case do nothing to alleviate the uncertainty. The 1973 Judgment looks like it derives from a settlement of some sort, which makes a difference in the ancillary jurisdiction analysis (discussed below). Although the Court is not aware of any agreement denominated a "settlement agreement," the 1973 Judgment was obviously the result of the parties' negotiations. For example, the 1973 Judgment appends the Assignment, a detailed and technical contract that the Court certainly did not draft itself. (ECF No. 35-3.) The 1973 Judgment also states, "In consideration of the payments herein set forth . . . both parties stipulate and agree that no appeal from the Judgment shall be taken by either party." (ECF No. 35-2 ¶ 7.) Finally, the 1973 Judgment specifically states that the parties had "compromised the dispute between them with respect to [pre-judgment interest]." (*Id*. ¶ c.) For all these reasons, the Court concludes that the 1973 Judgment was negotiated by the parties and is functionally equivalent to a settlement agreement.

The Supreme Court has spoken regarding federal courts' ancillary jurisdiction to enforce settlement agreements. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

U.S. 375 (1994).  In short, enforcing a settlement agreement is usually a question of enforcing a contract under state law and creates no ancillary jurisdiction unless

> the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.  In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id*. at 381.  The question here is whether the Court is being asked to enforce terms of a settlement incorporated into the judgment.

The answer is not straightforward.  As against TC Energy (the party over whom ancillary jurisdiction is needed), Grynberg asserts a failure to pay the 20% NPI.  (ECF No. 35 ¶ 29.)  The Judgment certainly incorporates an obligation to pay a 20% NPI (ECF No. 35-2 ¶ 4), but the Judgment runs against Hess, not against TC Energy.  Normally "a judgment or decree among parties to a lawsuit resolves issues as among them, but it does not conclude the rights of strangers to those proceedings."  *Richards v. Jefferson Cnty.*, 517 U.S. 793, 798 (1996) (internal quotation marks omitted; alterations incorporated).

There are various exceptions to this principle.  *See id*. (citing Restatement (Second) of Judgments, ch. 4 (1980)).  Among them is that "[a] judgment in an action that determines interests in real or personal property * * * [h]as preclusive effects upon a person who succeeds to the interest of a party to the same extent as upon the party himself."  Restatement (Second) of Judgments § 43(1)(b).  "The rules of this Section apply to succession by purchase (including a mortgage), gift, devise, and involuntary

transfers such as establishment of trusteeship in bankruptcy or conservatorship for an incompetent. They apply to remote successors as well as to immediate ones." *Id*. cmt. f.

Nonetheless, "[a] preliminary question in applying the rule of this Section is whether the action in which the judgment was rendered involved only a 'personal' claim or concerned property." *Id*. cmt. a. As it turns out, this entire dispute could turn on that "preliminary" question. TC Energy's and Denbury's Mississippi lawsuits claim that Grynberg's NPI was a personal interest, not a property interest, and did not burden subsequent assignments of the Tallahala Creek Field drilling rights. (ECF No. 47-1 ¶¶ 1, 10, 23; ECF No. 47-2 ¶ 17.)[5] If the Court were to permit this lawsuit to go forward, this theory would assuredly be asserted here too.

On its face, this might create a jurisdictional conundrum. Theoretically, whether the Court has ancillary jurisdiction over TC Energy turns on whether the Court is enforcing the Judgment against TC Energy; and whether the Court is enforcing the Judgment against TC Energy may turn on what appears to be a merits question about whether Grynberg's NPI is a personal or property interest; and if the answer is that it is a personal interest, it may be that both subject matter jurisdiction and the merits fail simultaneously. Merits determinations at the jurisdictional stage are something the Supreme Court has expressly counseled against. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–102 (1998).

---

[5] Denbury further claims that, even if the NPI is a property interest, it was extinguished through adverse possession. (ECF No. 47-2 ¶¶ 17, 22.)

Luckily, the Court need not resolve this conundrum. Even assuming that the NPI is a property interest, the Judgment would not bind TC Energy purely through its own force, *i.e.*, through this Court's power to issue writs of execution or garnishment, to hold defiant parties in contempt, and otherwise "vindicate its authority"—which is the purpose of ancillary jurisdiction. *Kokkonen*, 511 U.S. at 380. Rather, the Judgment would bind TC Energy by its "*preclusive* effects." Restatement (Second) of Judgments § 43(1)(b) (emphasis added). Preclusive effects are not the same as the power to execute on a judgment or to hold in contempt, or otherwise vindicate this Court's orders. Indeed, it seems obvious that one main purpose of preclusion law is to allow *other courts* to "enforce" a judgment—in the sense that the judgment forecloses further argument on claims and issues addressed (or which could have been addressed) in the previous suit. In other words, although the Judgment may have an effect on TC Energy, it is not an effect that *this Court* must enforce to "vindicate its role as a tribunal." 13 *Wright & Miller* § 3523.2. Mississippi courts apply traditional preclusion principles to federal judgments. *See, e.g.*, *Hill v. Carroll Cnty.*, 17 So. 3d 1081, 1087 (Miss. 2009).

"[A]ncillary jurisdiction [to enforce a judgment] remains a *narrow* exception to a federal district court's limited subject matter jurisdiction." *Winter v. Novartis Pharm. Corp.*, 39 F. Supp. 3d 348, 351 (E.D.N.Y. 2014) (emphasis added). Because the purposes of ancillary jurisdiction are not met in this instance, ancillary jurisdiction does not exist over TC Energy.

## C. Ancillary Jurisdiction Over a Decades-Old Money Judgment

The Court finds it lacks ancillary jurisdiction for an additional reason. In short,

Grynberg has waited too long to enforce this 1973 Judgment through ancillary jurisdiction.

As noted above, the 1973 Judgment was the product of some sort of settlement negotiations. The 1973 Judgment, however, does not state that the Court retains jurisdiction over the performance of that agreement. Without such a statement (and perhaps even with it), it is unreasonable to expect continuing jurisdiction when more than forty years have passed between entry of judgment and the suit to enforce it. *See, e.g.*, *McCall-Bey v. Franzen*, 777 F.2d 1178, 1187 (7th Cir. 1985) ("[W]e hesitate to use so formless a concept as inherent power to give the federal courts an indefinite jurisdiction over disputes in which the federal interest may be nonexistent. If the parties want the district judge to retain jurisdiction they had better persuade him to do so.");[6] *Brass Smith, LLC v. RPI Indus., Inc.*, 827 F. Supp. 2d 377, 383 (D.N.J. 2011) ("whether the Court has decided to retain jurisdiction or not, its exercise twenty years removed from the issuance of the consent judgment impermissibly strains the limits of federal court authority"). For this additional reason, the Court lacks ancillary jurisdiction.

**D.    Rule 19(b)**

The Court lacks both traditional subject matter jurisdiction and ancillary jurisdiction over TC Energy. The Court must therefore evaluate whether TC Energy is an indispensable party. *See* Fed. R. Civ. P. 19(a)(1). The Court finds that TC Energy is such a party. Specifically, the Court finds that, in TC Energy's absence, it is likely

---

[6] The Court agrees with *McCall-Bey*'s contrast between a settlement agreement leading to a money judgment, as in this case, and "an equity case end[ing] in a permanent injunction, [where] the trial court, with or without an explicit reservation of jurisdiction, retains jurisdiction to enforce the injunction, as by contempt proceedings." *Id.* at 1183.

16

that "the court cannot accord complete relief among existing parties." *Id*. 19(a)(1)(A). Grynberg alleges that TC Energy owns the Tallahala Creek Field rights subject to his NPI. (ECF No. 35 ¶¶ 3, 17.) Thus, if the NPI remains enforceable, TC Energy almost certainly is the party against whom it would be enforced.

Given that TC Energy is indispensable but cannot be joined, the Court must next

> determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> > (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> >
> > (2) the extent to which any prejudice could be lessened or avoided by:
> >
> > > (A) protective provisions in the judgment;
> > >
> > > (B) shaping the relief; or
> > >
> > > (C) other measures;
> >
> > (3) whether a judgment rendered in the person's absence would be adequate; and
> >
> > (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b). The weighing of these factors is a matter in this Court's discretion. *Davis v. United States*, 343 F.3d 1282, 1289 (10th Cir. 2003).

The Court finds that factors (1), (3), and (4) are dispositive. As to factor (1), a judgment rendered in TC Energy's absence (*i.e.*, against Tellus) could prejudice it in any other action related to the same subject matter. As to factor (3), a judgment in TC Energy's absence would not be adequate for the same reasons that TC Energy is an

indispensable party.  Any ongoing obligation to pay Grynberg's NPI would most likely be an obligation against TC Energy.  Finally, as to factor (4), Grynberg has an adequate remedy in Mississippi, where all the parties are already litigating the same substantive issues raised here.  Thus, this action should not proceed without TC Energy's participation.  It must therefore be dismissed.

### III.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. TC Energy, LLC's Motion to Dismiss (ECF No. 92) and Hess Corporation, Inc.'s Joinder in Motion to Dismiss (ECF No. 94) are GRANTED;

2. Defendant and Third-Party Plaintiff Hess Corporation, Inc.'s Motion to Stay the Case (ECF No. 47) is DENIED AS MOOT;

3. Denbury Onshore, LLC's Motion to Dismiss First Amended Third-Party Complaint (ECF No. 54) is DENIED AS MOOT;

4. Tellus Operating Group LLC's Motion to Dismiss (ECF No. 95) is DENIED AS MOOT; and

5. The Clerk SHALL ENTER FINAL JUDGMENT in accordance with this Order and SHALL TERMINATE this case.  The parties shall each bear their own attorneys' fees and costs.

Dated this 30th day of April, 2015.

BY THE COURT:

William J. Martinez
United States District Judge